**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**WILLIAM CONKLIN,** individually and
by his guardian, **SUSAN CONKLIN,**

        Plaintiffs,

**v.**                                       **CIVIL ACTION NO. 3:16-CV-8
(BAILEY)**

**JEFFERSON COUNTY BOARD OF EDUCATION,
HOWARD GUTH,** Principal, in his individual and
official capacity, and **TERRY TAYLOR,**
in his official and individual capacity,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

On this day, the above-styled civil action came before this Court for consideration of Defendant Terry Taylor's and Defendants Jefferson County Board of Education and Howard Guth's Motions to Dismiss Plaintiffs' Complaint [Docs. 5; 7], filed April 13, 2016. The plaintiffs filed their Responses to both motions [Docs. 12; 13] on May 2, 2016. Defendant Taylor filed his Reply [Doc. 14] on May 9, 2016. Defendants Jefferson County Board of Education ("Board") and Guth filed their Reply [Doc. 15] on May 12, 2016. Having been fully briefed, this matter is now ripe for adjudication. For the reasons set forth herein, this Court hereby grants in part and denies in part the Motions to Dismiss.

**I.**    **BACKGROUND**

    **A.**    **Factual Allegations**

The plaintiff's challenged Complaint alleges facts as follows. [Doc. 1]. Plaintiff William Conklin (hereinafter "the plaintiff") had been a special education student in the

Jefferson County school system since the age of seven years old. During the 2013-2014 school year, the plaintiff was placed in Defendant Terry Taylor's special education classroom at Jefferson High School. [*Id.* at ¶ 27]. On January 16, 2014, in Defendant Taylor's classroom, the plaintiff "spoke to or made a comment about a classmate," at which point Defendant Taylor grabbed the plaintiff "by the neck, choking him, and pushed him into a bookcase." [*Id.* at ¶ 28]. This caused marks on his body, aggravated a prior back injury, caused pain, caused extreme humiliation and embarrassment, and caused the plaintiff to have "extreme fear." [*Id.*]. A criminal investigation commenced thereafter, and Defendant Taylor was criminally charged with unlawful restraint and battery. [*Id.* at ¶ 29].

Following the January 16 incident, the plaintiff and Plaintiff Susan Conklin, his mother and guardian, met with Assistant Principal Tony Roman, Director of Pupil Services Charles Hampton, and Defendant Howard Guth, the principal. Defendant Guth "told William the assault [was] William's fault." [*Id.* at ¶ 30].

Defendant Taylor then returned to his special education classroom, which was the only appropriate special education classroom for the plaintiff at Jefferson High School. The plaintiff "was fearful of being around Mr. Taylor and emotionally unable to return to the same classroom" once Defendant Taylor returned. The defendants offered the plaintiff early graduation "even though he had not accomplished the goals on his Individual Education Plan ("IEP") including transition services." The plaintiff and his mother refused, and the plaintiff was placed on homebound instruction, which was initially located "in a trailer classroom" that was "only a few feet from the door of Defendant Taylor's classroom." The plaintiff remained fearful of seeing Defendant Taylor, so his homebound instruction was moved to the public library, where an instructor provided him with academic services

2

three times per week. The plaintiff states this caused him "embarrassment, humiliation and isolation from his peers." [*Id.* at ¶ 31].

The following school year was the plaintiff's final year of high school. Defendant Taylor was rehired for that school year and assigned as the teacher in the special education classroom, to which the plaintiff had been assigned and which had been identified by his IEP team as the appropriate classroom for his educational needs prior to the January 16 incident. Aside from Defendant Taylor's classroom, the school had "nothing to offer except an autism classroom deemed inappropriate at an out of district school or continued homebound instruction." The plaintiff continued to receive his education via homebound services and "continued to request that he be placed back in Jefferson High School for his senior year," particularly because he wanted to participate in class outings. Approximately two months before the end of the school year, the school agreed to move the plaintiff's homebound instruction to the school library three days per week and to prevent Defendant Taylor from being in the bus pick-up area while the plaintiff was leaving school. The plaintiff states that he "feared each day that he would encounter Defendant Taylor." [*Id.* at ¶ 32].

While receiving homebound instruction, the plaintiff was "very unhappy and angry," and would have "outbursts of anger at home where he was verbally abusive to his mother and at his counselor's office," which resulted in him being banned from the counseling office and losing his long-time mental health counselor, whom he has been unable to replace. His isolation from the school community "[led] to feelings of sadness, isolation, and humiliation." [*Id.* at ¶ 34]. Homebound instruction also caused the plaintiff to lose his transition services that were intended to increase his independence and employability,

"which were only available in the school setting."  The plaintiff states that he continues to struggle to obtain vocational skills.  [*Id.* at ¶ 36].

The plaintiff graduated in June of 2015, but he was "so fearful of seeing Defendant Taylor that he was emotionally unable to attend his graduation ceremony."  [*Id.* at ¶¶ 32-33].

Prior to the January 16 incident, the plaintiff had a pre-existing back injury from a car wreck and, following the incident, "experienced increased pain requiring increased pain management and medication as well as evaluations of his back."  [*Id.* at ¶ 37].  He alleges that the "physical violence" toward him has been "allowed and condoned" by each of the defendants.  [*Id.* at ¶ 38].  He also alleges that the actions of the defendants served no legitimate educational or other purposes, but that they instead "were inflicted to punish and humiliate with a [wanton] and reckless disregard for the rights, feelings, safety and welfare" of the plaintiff.  [*Id.* at ¶ 39].  Further, the plaintiff states that he "is informed and believes, and therefore alleges, that the above-described pattern and practice of condoning the use of violence toward disabled children in the Jefferson County Public Schools is not appropriate to achieve educational goals, and they instead have resulted in lasting and irreparable damage to the plaintiff."  [*Id.* at ¶ 40].

### B.    Procedural History

The plaintiff and his guardian filed their Complaint [Doc. 1] in this Court on January 14, 2016.  The Complaint alleges seven causes of action, including violations of 42 U.S.C. § 1983, a violation of 29 U.S.C. §§ 794 *et seq.*, a violation of 42 U.S.C. §§ 12131 *et seq.*, intentional infliction of emotional distress, and a state tort claim for personal injury.  As relief, the plaintiff requests appropriate relief at law and equity; economic losses on all

claims allowed by law including $3000 for medical and psychological treatment; compensatory, consequential, and future damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; punitive damages on all claims allowed by law and in an amount to be determined at trial; attorney fees and all costs associated with this action, including expert witness fees, on all claims allowed by law; pre- and post-judgment interest at the highest lawful rate; and any further relief that this Court deems just and proper, and any other relief as allowed by law.

The defendants moved to dismiss the entire Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docs. 5; 7] on April 13, 2016.

## II.    **LEGAL STANDARD**

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court accepts all well-pled facts in the complaint as true and construes those facts in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008). Legal conclusions, recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement do not constitute well-pled facts for Rule 12(b)(6) purposes. *See Iqbal*, 556 U.S. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." ***Republican Party of N.C. v. Martin***, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" ***Goodman v. Praxair, Inc.***, 494 F.3d 458, 464 (4th Cir. 2007) (quoting ***Richmond, Fredericksburg & Potomac R.R. v. Forst***, 4 F.3d 244, 250 (4th Cir. 1993)).

Facial plausibility is established where the facts alleged in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Id***. This context-specific test does not require "detailed factual allegations," but the complaint must produce an inference of liability strong enough to nudge the plaintiff's claims "across the line from conceivable to plausible." ***Twombly***, 550 U.S. at 555, 570. When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995).

## III. <u>DISCUSSION</u>

Specifically, the Complaint alleges the following claims: (1) violation of Fourth Amendment constitutional guarantee against unlawful searches and seizures pursuant to 42 U.S.C. § 1983 against all defendants; (2) violation of constitutional right to substantive

due process pursuant to 42 U.S.C. § 1983 against all defendants; (3) deprivation of liberty without due process pursuant to 42 U.S.C. § 1983 against Defendant Taylor; (4) violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*) against all defendants; (5) violation of the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12131 *et seq.*) against all defendants; (6) intentional infliction of emotional distress against Defendant Taylor and Defendant Board; and (7) state tort claim for personal injury against Defendant Taylor and Defendant Board. [Doc. 1].

In response, Defendant Taylor moves to dismiss the plaintiff's Complaint because the plaintiff's claims of violations of the Fourth Amendment, substantive and procedural due process, and the Rehabilitation Act and ADA do not amount to actionable claims; because Defendant Taylor is entitled to qualified immunity; and because the plaintiff has failed to plead a viable cause of action for intentional infliction of emotional distress and for personal injury. [Doc. 6].

Defendant Board and Defendant Guth also move to dismiss the plaintiff's Complaint because the plaintiff failed to state any claim under 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, the ADA, or for intentional infliction of emotional distress; because Defendant Guth is entitled to immunity; because the plaintiff failed to state a claim against Defendant Board and Defendant Guth in his individual capacity; because the plaintiffs claims regarding free appropriate public education have been mooted by the resolution of his due process claim or, alternatively, are barred by failure to exhaust administrative remedies under the IDEA; and because "state tort claim for personal injury" is not a recognized cause of action nor states a claim against Defendant Board. [Doc. 8]. Defendant Board also avers that the plaintiff cannot recover against it on his state law

claims.  [*Id.*].

**A.**     **§ 1983 Immunity**

The Supreme Court of the United States has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation . . .."  **Hunter v. Bryant**, 502 U.S. 224, 227 (1991); *see* **Brockington v. Boykins**, 637 F.3d 503, 506 (4th Cir. 2011) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.").  As all three defendants have raised immunity defenses in their motions, this will be addressed first.

**1.**     **Claims Against the Individual Defendants in Their Official Capacities**

As an initial matter, Defendant Guth notes that the plaintiff names him as a defendant in his individual and official capacity, and avers that a suit against a government official in his or her official capacity is tantamount to a claim against the government entity itself.  [Doc. 8 at 11].  The Supreme Court has indicated that a § 1983 claim against a government official in his official capacity is generally "only another way of pleading an action against an entity of which the officer is an agent."  **Kentucky v. Graham**, 473 U.S.159, 165 (1985) (citing **Monell v. New York City Dept. of Social Services**, 436 U.S. 658, 690, n.55 (1978)); *see also* **Love-Lane v. Martin**, 355 F.3d 766, 783 (4th Cir. 2004). This being the case, and uncontested by the plaintiff, it is appropriate to **DISMISS** the § 1983 claims against Defendant Guth in his official capacity, as they are duplicative of the § 1983 claims against Defendant Board.  Moreover, although Defendant Taylor did not

raise the official versus individual capacity consideration in his motion to dismiss, this Court finds that the same rationale is appropriately applied to Defendant Taylor with regard to the § 1983 claims against him in his official capacity, and the same should also be **DISMISSED**.

2. **Claims Against the Individual Defendants in Their Individual Capacities**

Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacities. *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009) (citing *Brandon v. Holt*, 469 U.S. 464, 472-73 (1985); *Owen v. City of Independence*, 445 U.S. 622, 638 (1980)). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Qualified immunity protects "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As an initial matter, taking the well-pled facts in the Complaint as true, this Court must identify whether any statutory or constitutional rights were violated and then ask whether those rights were clearly established at the time of the violation. *Leonard v. Starkey*, 2016 WL 183557, at *16 (N.D. W.Va. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 2015 WL 3651646, at *4 (4th Cir. 2015)). This Court, in its discretion, may decide "which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand." ***M.C. ex rel. Crawford v. Amrhein***, 598 Fed.Appx. 143, 146 (4th Cir. 2015) (citing ***Pearson***, 555 U.S. at 236).

      a.   *Allegations Against Defendant Guth*

The specific allegation in the Complaint against Defendant Guth is that he "told [the plaintiff] the assault [was his] fault," [Doc. 1 at ¶ 30].  This is also the only specific allegation against Defendant Guth referred to by the plaintiff's Response with regard to qualified immunity for Defendant Guth, additionally stating that this "lie" "resulted in his exclusion and loss of educational benefits."  [Doc. 13 at 16].  In taking the factual allegations in the Complaint in the light most favorable to the plaintiff and reading the Complaint as a whole, it can be inferred that the plaintiff alleges that Defendant Guth was at least in part responsible for retaining Defendant Taylor as the teacher in the Jefferson High School special education classroom, which the plaintiff alleges deprived him of educational benefits.  As such, this Court infers that this is the particular allegation the plaintiff is relying on to aver Defendant Guth is not entitled to qualified immunity.  Additionally, the bulk of the Complaint focuses on the actions of Defendant Board rather than Defendant Guth, and the additional seeming references to Defendant Guth are overly vague such that this Court finds them not to be well-pled as they relate to Defendant Guth and will give them no consideration.

A student has legitimate entitlement to a public education as a property interest, "which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause." ***Goss***

*v. Lopez*, 419 U.S. 565, 574 (1975).  The plaintiff attempts to allege that his constitutional property interest in educational benefits was taken from him by the actions of Defendant Guth.  However, it is apparent from the Complaint that the plaintiff was not wholly deprived of educational benefits, as effort was made to permit his continued education while maintaining distance from Defendant Taylor.  Specifically, the plaintiff "was placed on home bound instruction" that was "moved to the public library" after the initial location was deemed too close to Defendant Taylor for the plaintiff's comfort.  [Doc. 1 at ¶ 31].  The homebound instruction continued the following year and was even moved back to the school library three days per week at the plaintiff's request, during which time Defendant Taylor was kept away from the plaintiff.  [*Id.* at ¶ 32].  Moreover, the plaintiff graduated in June 2015, an accomplishment that would not have been possible had the plaintiff been deprived of educational benefits.  The Complaint does not allege that Defendant Taylor's retention as a teacher was conduct undertaken specifically by Defendant Guth to deprive the plaintiff of educational benefits, nor was the plaintiff deprived of the same.  The plaintiff did lose some educational benefits, but he certainly was not deprived of his entire educational interest.  As such, the plaintiff has not alleged the violation of any clearly established constitutional right on behalf of Defendant Guth, and Defendant Guth is entitled to qualified immunity.  Any § 1983 claims against Defendant Guth are hereby **DISMISSED**.

b.      *Allegations Against Defendant Taylor*

The plaintiff alleges that his constitutional rights were violated when Defendant Taylor "grabbed Plaintiff by the neck, choking him, and pushed him into a bookcase," after the plaintiff "spoke to or made a comment about a classmate" and "then attempted to block

Plaintiff's exit from the room." [Doc. 1 at ¶¶ 28-29]. Stated differently, the plaintiff alleges that "defendant Taylor inflicted physical violence and restraint upon Plaintiff for such actions as speaking to or commenting about a fellow student and/or for touching Taylor on the shoulder to get his attention." [*Id.* at ¶ 60]. The plaintiff alleges multiple times that this occurred "within the scope of [his] official duties and employment and under color of [] law." [*Id.* at ¶¶ 51, 62]. Additionally, in his Fourth Amendment claim, the plaintiff states that these actions "were motivated by an intention to punish and harm Plaintiff." [*Id.* at ¶ 46]. Thus, in reading the Complaint in the light most favorable to the plaintiff and taking the allegations as true, it appears as though the plaintiff is alleging excessive corporal punishment within the scope of Defendant Taylor's employment. The Supreme Court has found that "where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain . . . the Fourteenth Amendment liberty interests are implicated." ***Ingraham v. Wright***, 430 U.S. 651, 674 (1977). In discussing these interests, the Supreme Court referred to the same as "historic" and noted it "fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law." ***Id.*** at 673-674. Further, the Fourth Circuit, in rejecting a qualified immunity defense, held that "'[i]n the Fourth Circuit, educators have been aware that arbitrary use of corporal punishment . . . [has been] prohibited by the Fourteenth Amendment since at least' . . . 1980." ***Meeker v. Edmundson***, 415 F.3d 317, 323 (4th Cir. 2005); *see also* ***W.E.T. v. Mitchell***, 2008 WL 151282, at *12-15 (M.D. N.C. 2008). In reading the Complaint as a whole and accepting its allegations as true, Defendant Taylor, the plaintiff's special education teacher, acted in

an excessive response to the plaintiff's comment to another student, grabbed the plaintiff–a disabled student who, among other things, had asthma–by the throat, choked him, and pushed him into a bookcase. Based even just on these facts, this Court finds that the plaintiff's Complaint alleges conduct that plausibly no reasonable official could have believed to be lawful, in light of clearly established law, and Defendant Taylor is not entitled to qualified immunity.

### 3.    Allegations Against the School Board

A political subdivision, such as a school board, cannot be held liable under § 1983 solely because it employs a tortfeasor. *Monell*, 436 U.S. at 691. Nor can a government entity "be held liable under § 1983 on a respondeat superior theory." *Id*. As such, for a government entity such as Defendant Board to be liable under § 1983, the action that caused a constitutional tort must have been undertaken pursuant to official municipal policy. *Id*. A single alleged act "cannot suffice, standing alone, to establish the existence of such a policy." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 875 (4th Cir. 1989).

The Complaint alleges that the Board "had a policy, custom or practice of failing to adequately train and supervise its faculty in the use of appropriate, non-violent discipline and behavioral interventions," which resulted in the "unreasonable seizure" that "violated Plaintiff's constitutional rights." [Doc. 1 at ¶ 47]. It also alleges that the defendants, "as part of a custom, policy and/or practice, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the Constitution and law," that "forcibly seizing a student with a disability and pushing him into a bookcase without justification" was "in

accordance with Board custom, policy and/or practice," and that Defendant Board should have known that the policy was ineffective. [*Id.* at ¶¶ 55-57]. No other facts in the Complaint–such as, for an important example, other instances in which any employee acted pursuant to the alleged policy that resulted similarly–support that the Board had such a policy pursuant to which Defendant Taylor was acting at the time of incident. Alleging a single instance without any further factual enhancement while simultaneously stating the critical element necessary to impose liability is insufficient to allege the existence of a policy and tantamount to reciting a legal conclusion devoid of facts. *See Revene*, 882 F.2d at 875. Accordingly, the § 1983 claims against Defendant Board are hereby **DISMISSED**.

**B.** **Claims Pursuant to § 1983**

Section 1983 allows for a plaintiff to assert a claim against any "person" who, acting under color of state law, "depriv[ed] [another] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States. *See Wirth v. Surles*, 562 F.2d 319, 321 (4th Cir. 1977) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). As noted, the § 1983 claims against Defendant Guth and Defendant Board are to be dismissed. As such, this Court will analyze the § 1983 allegations remaining against Defendant Taylor.

**1.** **Allegation of Fourth Amendment Violations**

The plaintiff's first cause of action alleges that Defendant Taylor, "in physically

seizing Plaintiff, unlawfully subjected Plaintiff to excessive, unreasonable, and unnecessary physical force and thereby caused serious long-term physical and psychological harm" [Doc. 1 at ¶ 44], and these actions "intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America" [*Id.* at ¶ 52] under the Fourth Amendment. Defendant Taylor argues that this does not amount to an actionable claim because it is governed by and analyzed under the Fourteenth Amendment pursuant to Fourth Circuit precedent. [Doc. 6 at 7-8]. In response, the plaintiff rejects the Fourth Circuit precedent because it deals with "excessive corporal punishment" rather than "assault . . . wholly unrelated to a disciplinary purpose," and cites to Seventh Circuit precedent, arguing that the assault on the plaintiff can be analyzed under both substantive and procedural due process. [Doc. 12 at 3-4].

As discussed herein, a plain reading of the allegations set forth in the Complaint indicates that the plaintiff is alleging excessive corporal punishment. The plaintiff's assertion in his response that the actions of Defendant Taylor were "wholly unrelated to a disciplinary purpose" contradicts the allegations in the Complaint that the plaintiff "was in his classroom when he spoke to or made a comment about a classmate at which time Defendant Taylor grabbed Plaintiff by the neck" [Doc. 1 at ¶ 28], that "Defendant Taylor inflicted physical violence and restraint upon Plaintiff for such actions as speaking to or commenting about a fellow student and/or for touching Taylor on the shoulder to get his attention" [*Id.* at ¶ 44], and that Defendant Taylor's "actions as described above[] were motivated by an intention to punish and harm Plaintiff" [*Id.* at ¶ 46]. This is especially true in light of the plaintiff's allegation that these actions were done within the scope of Defendant Taylor's official duties and employment. [*Id.* at ¶ 51]. The discipline plausibly

may have been excessive or unreasonable, but as alleged, it appears that Defendant Taylor's actions were motivated in some part by disciplinary purposes. The plaintiff's classification of the incident as "wholly unrelated to a disciplinary purpose" is unpersuasive and incompatible with the allegations in the Complaint. Thus, Defendant Taylor's actions are properly classified as corporal punishment, and the Fourth Circuit's controlling precedent applies. The Fourth Circuit has discussed the right to bodily security in the context of corporal punishment in a public school setting as a concern of substantive due process under the Fourteenth Amendment. **Hall v. Tawney**, 621 F.2d 607 (4th Cir. 1980). Accordingly, the plaintiff's Complaint fails to allege a violation of the Fourth Amendment's constitutional guarantee against unlawful searches and seizures, and the First Cause of Action should be **DISMISSED**.

### 2. Allegation of Violation of Substantive Due Process

The plaintiff's second cause of action alleges, *inter alia*, that the plaintiff had a "liberty interest in personal security and freedom from restraint and infliction of pain through a course of conduct that shocks the conscience," that the defendant "knew or should have known that violently choking and pushing plaintiff against a bookcase would cause him physical and emotional harm," that the defendant "inflicted physical violence and restraint" upon the plaintiff "for such things as speaking to or commenting about a fellow student and/or for touching Taylor on the shoulder to get his attention," and that as a result of these actions, the plaintiff suffered physical and emotional injuries. [Doc. 1 at ¶¶ 55, 58, 60, 61]. It further alleges that the defendant's actions "were objectively unreasonable, willful and wanton, and shocking to the conscience in light of the facts and circumstances surrounding

the assault on a disabled person entrusted" to the defendant's care.   [*Id.* at ¶ 64].

Defendant Taylor's motion to dismiss argues that this allegation does "not rise to the level

of conscience-shocking actions required under ***Hall***[1] to state a valid claim for a potential

substantive due process violation under the Fourteenth Amendment."  [Doc. 6 at 9].   In

response, the plaintiff cites to ***Meeker***[2] in arguing that Defendant Taylor's actions as

alleged were "malicious and inhumane," and the injuries resulting therefrom were shocking

to the conscience.  [Doc. 12 at 4-6].

As stated by the Fourth Circuit, "the substantive due process inquiry in school

corporal punishment cases must be whether the force applied caused injury so severe, was

so disproportionate to the need presented, and was so inspired by malice or sadism rather

than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane

abuse of official power literally shocking to the conscience."  ***Hall***, 621 F.2d at 613.  In ***Hall***,

the complaint alleged in pertinent part that the defendant "'without apparent provocation'

struck the minor plaintiff 'with a homemade paddle, made of hard thick rubber and about

five inches in width . . . across her left hip and thigh'; that in an ensuing struggle with the

plaintiff he 'violently shoved the minor plaintiff against a large stationary desk'; that he then

'vehemently grasped and twisted the plaintiff's right arm and pushed her into' the presence

of [another defendant] who then granted permission to [the defendant] to 'again paddle the

minor plaintiff'; that 'the minor plaintiff was again stricken repeatedly and violently by the

defendant [] with the rubber paddle, under the supervision and approval of [the other

_____

[1]***Hall v. Tawney***, 621 F.2d 607 (4th Cir. 1980).

[2]***Meeker v. Edmondson***, 415 F.3d 317 (4th Cir. 2005).

defendant]'; that as a result of this application of force "the minor plaintiff was taken that afternoon to the emergency room of (a nearby hospital) where she was admitted and kept for a period of ten (10) days for the treatment of traumatic injury to the soft tissue of the left hip and thigh, trauma to the skin and soft tissue of the left thigh, and trauma to the soft tissue with ecchyniosis of the left buttock'; that for the injuries inflicted, the minor plaintiff was 'receiving the treatment of specialists for possible permanent injuries to her lower back and spine and has suffered and will continue to suffer severe pain and discomfort, etc.'" *Id*. at 614.   Additionally there were allegations regarding the defendant's demonstrated attitude toward the plaintiff and other student members of her family from which malicious motivation "might be inferred."   *Id*.   The Court found these allegations to be bare and conclusory, but still held that they sufficed to state a claim for relief pursuant to 42 U.S.C. § 1983.  *Id*.

The allegations in *Meeker*, upon which the plaintiff's response relies, asserted that a coach asserted force in the form of brutal and unprovoked beatings, deliberately and intentionally instituted the unprovoked beatings on numerous occasions, and repeatedly directed other students to do the unprovoked and malicious beatings, causing the plaintiff to suffer excruciating physical pain and inflammation of the body, and traumatic stress disorders that may have been permanent in nature.  *Meeker*, 415 F.3d at 321. The Court found these adequate to support a substantive due process claim.  *Id*.

In the plaintiff's Complaint, the factual allegations begin by elaborating upon the detriment to the mental and physical health of children and disabled adults caused by the use of physical force and/or violence, and the requirement that public school classrooms

"create, encourage, and maintain a safe, and fear-free school environment."  [Doc. 1 at ¶¶ 24-26].  The Complaint identifies the plaintiff as a special education student diagnosed with Attention Deficit/Hyperactivity Disorder, Impulse-Control Disorder, Bipolar Disorder, Mild Mental Retardation, Asthma, and Mild Hearing Loss.  [*Id.* at ¶ 15].  The Complaint alleges that on the date of the incident, the plaintiff was in class with Defendant Taylor "when [the plaintiff] spoke to or made a comment about a classmate," at which point Defendant Taylor "grabbed Plaintiff by the neck, choking him, and pushed him into a bookcase."  [*Id.* at ¶ 28]. This aggravated "a prior back injury" and caused pain, "extreme humiliation and embarrassment," and "extreme fear" [*Id.* at ¶ 28], and was "inflicted to punish and humiliate with a [wanton] and reckless disregard for the rights, feelings, safety and welfare" of the plaintiff [*Id.* at ¶ 39].

The specific allegations in the second cause of action state that the defendant "forcibly seiz[ed] a student with a disability and push[ed] him into a bookcase without justification," "violently chok[ed] and push[ed] Plaintiff against a bookcase," "inflicted physical violence and restraint upon Plaintiff for such actions as speaking to or commenting about a fellow student and/or for touching Taylor on the shoulder to get his attention."  [*Id.* at ¶¶ 56, 58, 60].  Defendant Taylor's actions are described as "objectively unreasonable, willful and wanton, and shocking to the conscience in light of the facts and circumstances surrounding the assault on a disabled person entrusted to [Defendant Taylor's] care."  [*Id.* at ¶ 64].  The plaintiff also states that, resulting from Defendant Taylor's actions, he sustained "actual damages, including injuries to his person, pain, mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness and anxiety as well as future damages including fear, lack of trust, and increased risk of

isolation from general society." [*Id.* at ¶ 61]. Later in the Complaint, the plaintiff alleges that Defendant Taylor's actions were "deliberate, malicious and intentional and without provocation," that Defendant Taylor "knew or should have known that due to his superior size and strength his actions" would cause injury to the plaintiff, that the plaintiff's mental and psychological disabilities would cause the defendant's actions to have serious and lasting emotional injuries, and that the plaintiff suffered "aggravation to a pre-existing back injury with increased chronic pain, red marks, soreness, anguish, humiliation, fear, and loss of enjoyment of life." [*Id.* at ¶¶ 92-93].

These allegations are, on the whole, rather conclusory. The allegations are rife with bare assertions with minimal factual development. The allegations found to be sufficient to state a claim in **Hall** and **Meeker** are considerably more detailed and, particularly in **Meeker**, more severe such that it is more apparent that the plaintiff was entitled to relief. Indeed, the plaintiff's response in opposition to Defendant Taylor's motion to dismiss does a much more efficient job of alleging that the force utilized was shocking to the conscience than the Complaint, but it is not the sufficiency of the response that is being tested. However, in reading the Complaint as a whole and viewing these allegations in the light most favorable to the plaintiff, it is plausible that Defendant Taylor's infliction of physical violence and restraint upon a disabled plaintiff for such action as speaking to another student, thereby causing the litany of injuries listed in the Complaint, rose to the level of malicious severity necessary to entitle the plaintiff to relief pursuant to 42 U.S.C. § 1983, especially due to the allegations that an educator of "superior size and strength" grabbed by the neck and choked an asthmatic special needs student. Of course, as cautioned in

*Hall* and *Meeker*, "upon full development of a summary judgment or trial record, it may appear that the actual facts of the incident do not support a claim of substantive due process violation." *Hall*, 621 F.2d at 614; *Meeker*, 415 F.3d at 323. However, at this juncture for 12(b)(6) purposes, this Court finds that these allegations, albeit conclusory themselves, are sufficient to set forth a violation of a constitutional substantive due process right against Defendant Taylor, particularly in light of the plaintiff's disabilities and Defendant Taylor's position of trust.

### 3. Allegation of Violation of Procedural Due Process

The plaintiff's third cause of action alleges that the plaintiff "has a procedural due process right to be free of deprivations of liberty and assaults on his bodily integrity without due process of law," and that Defendant Taylor's actions deprived him of "his right to be free from unlawful deprivations of his liberty and bodily integrity without due process of law." [Doc. 1 at ¶ 67]. It further alleges that public school students, particularly those with disabilities, "have a constitutionally protected right to be free from punitive and malicious physical abuse from school employees. This abuse was an unlawful violation of Plaintiff's constitutionally protected right to liberty." [*Id.* at ¶ 68]. Further, Defendant Taylor's actions caused and continue to cause the plaintiff to suffer "physical and mental pain . . . from the resulting ongoing and continuous psychological injury," and Defendant Taylor "intentionally deprived Plaintiff" of constitutional guarantees. [*Id.* at ¶¶ 69-70].

Defendant Taylor argues that these allegations of deprivation of liberty without due process "do not amount to an actionable claim against him because corporal punishment does not infringe upon a student's procedural due process rights." [Doc. 6 at 14]. The

plaintiff's response argues that this is "too simplistic under the current facts," that "there is a factual issue as to whether Defendant Taylor's actions can even be proven to be corporal punishment related to discipline," and that the result of the incident was that the plaintiff "was precluded from school and lost many of the educational benefits of being in school." [Doc. 12 at 8].  As an initial matter, the plaintiff's response mischaracterizes the purpose of a 12(b)(6) motion.  Defendant Taylor is asserting that the plaintiff failed to state an actionable claim in his Complaint, and the question is one of sufficiency.  Questions of factual issues are reserved for the summary judgment or trial stage. In fact, the plaintiff's statement that "there is a factual issue as to whether Defendant Taylor's actions can even be proven to be corporal punishment related to discipline" serves to weaken an argument that his third cause of action, as pleaded, entitled him to relief.

Furthermore, the plaintiff's response to Defendant Taylor's motion to dismiss regarding the alleged procedural due process claim misinterprets his own procedural due process allegations as pleaded in his Complaint.  The third cause of action focuses exclusively on deprivation of liberty and bodily integrity caused by Defendant Taylor's use of force, and the physical and psychological injuries resulting therefrom.  It in no way references the loss of educational benefits alleged elsewhere in the Complaint, and this Court will not read them into this cause of action, even in viewing the Complaint in the light most favorable to the plaintiff, which would essentially enable the plaintiff to amend his complaint via a responsive brief.  Had the plaintiff intended to allege deprivation of educational benefits within this particular cause of action, it should have been better pled and considerably more clear.  As such, this Court will focus on the specific allegations actually stated in the plaintiff's procedural due process claim.

22

In **Meeker**, the Fourth Circuit recognized that in **Ingraham**, the Supreme Court expressly found that corporal punishment in public schools implicates a constitutionally protected liberty interest to be free from unjustified intrusions on bodily security, but "did not infringe a student's Eighth Amendment or *procedural* due process rights . . .." **Meeker**, 415 F.3d at 320 (emphasis in original); *see also* **Ingraham**, 430 U.S. at 672. **Ingraham** concluded that the Due Process Clause of the Fourteenth Amendment "does not require notice and a hearing prior to the imposition of corporal punishment in the public schools, as that practice is authorized and limited by the common law." **Ingraham**, 430 U.S. at 682. The Fourth Circuit also recognized this in **Hall**, noting that "substantive due process rights might be implicated in school disciplinary punishments even though procedural due process is afforded by adequate state civil and criminal remedies." **Hall**, 621 F.2d at 611.

As indicated herein, a fair reading of the plaintiff's Complaint, even in the light most favorable to the plaintiff and assuming all allegations to be true, indicates that the force used by Defendant Taylor is properly classified as corporal punishment related to discipline. The plaintiff's third cause of action alleges a due process right to be free from deprivations of liberty and assaults on his bodily integrity without due process of law. However, corporal punishment does not infringe on a student's procedural due process rights under the Fourteenth Amendment as it does not require prior notice and an opportunity to be heard before imposition of corporal punishment. As such, the plaintiff's allegation of deprivation of liberty without due process of law against Defendant Taylor should be **DISMISSED**.

### C.    Allegations of the Rehabilitation Act and ADA Violations

The plaintiff's fourth and fifth causes of action both allege that the alleged

discriminatory practices excluded the plaintiff from the benefits of participation in a public school education, that students without disabilities were not subjected to the same treatment as the plaintiff because of their lack of disabilities, that the defendants denied the plaintiff full and equal access to the public education programs and activities of the Jefferson County Public Schools that he was entitled to by failing to provide him with a free, appropriate education in an appropriate and safe placement, that the defendants' actions "were intentionally discriminatory and were taken with deliberate indifference to the strong likelihood that the actions would result in a violation of Plaintiff's federally protected rights," and that these practices caused damages. [Doc. 1 at ¶¶ 71-86]. The fourth cause of action alleges that this was in violation of Section 504 of the Rehabilitation Act, and the fifth cause of action alleges that this was in violation of Title II of the ADA.

The Fourth Circuit has determined that, because the language of Section 504 of the Rehabilitation Act and Title II of the ADA is substantially the same, the same analysis is to be applied to both. *Doe v. University of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995); *see also Bracey v. Buchanan*, 55 F.Supp.2d 416, 419-20 (E.D. Va. 1999). The Court will analyze the motions to dismiss the allegations pursuant to the Rehabilitation Act and ADA with this in mind.

### 1. Defendant Taylor's Motion to Dismiss Counts Four and Five

In Defendant Taylor's Motion to Dismiss, he argues that the plaintiff's fourth cause of action should be dismissed because the plaintiff's allegations of violation of the Rehabilitation Act do not amount to an actionable claim against Defendant Taylor "because individuals are not subject to liability under the Rehabilitation Act." [Doc. 6 at 16]. He avers

that the claims brought against him in his official capacity should be dismissed as this is to be treated as a claim against the entity for which he is an agent (to wit, Defendant Board), and that the claims brought against him as an individual should be dismissed because he cannot be individually liable under the Rehabilitation Act, particularly as Defendant Taylor is not an employer, and because the claim is insufficiently pled and "merely restate[s] his Fourteenth Amendment substantive due process claims." [*Id.* at 17-18]. He argues similarly regarding the plaintiff's ADA claims, asserting that a plaintiff cannot bring a suit against an individual in his personal capacity under Title II of the ADA [*Id.* at 19-20], and that a claim against Defendant Taylor in his official capacity for violation of the ADA should be considered and treated as a claim against the Board [*Id.* at 22]. Defendant Taylor also states that the Board made reasonable accommodations to the plaintiff based on his fear of Defendant Taylor, which the plaintiff has not shown to be unreasonable and alleges should have gone beyond what is required by Supreme Court and Fourth Circuit precedent, and that the plaintiff failed to show how defendant Taylor had a role in the determination of his education program after the incident. [*Id.* at 21].

In response, the plaintiff argues first that no "explanation for the assault has ever been given except as may be in the custody of the Defendants [Board] and/or Guth," and that in order to analyze Defendant Taylor's liability under either Act, "facts . . . need to be developed" because no "cases in any jurisdiction can be found that are on point with the facts of this case[, n]or is the reasoning in the case law involving application of § 504 of the Rehabilitation Act of the ADA to the school setting or employment setting easily borrowed for application in this situation." [Doc. 12 at 10]. He avers that based upon the facts and circumstances in this case, the Court "could find Defendant Taylor individually liable for

compensatory damages under § 504 of the Rehabilitation Act or the ADA," and that the accommodations made for the plaintiff after the incident were not reasonable as they "did not provide equal access to the program and services available to non-disabled students." [*Id.* at 11-12].

The plaintiff misinterprets the nature of the motion to dismiss stage of the proceedings. This Court is not determining whether an allegation needs further factual development to be sufficiently analyzed. This Court is testing the sufficiency of the plaintiff's Complaint and determining whether therein the plaintiff has alleged enough facts to state a claim to relief that is plausible. The plaintiff's response to Defendant Taylor's motion to dismiss fails to address the legal standards cited by Defendant Taylor and instead attempts to interpret the plaintiff's Complaint and instruct the Court as to what assumptions it must make. This Court will read the plaintiff's Complaint in the light most favorable to him for motion to dismiss purposes but will not adopt nor consider additional facts stated in the response to the motion to dismiss.

Individual capacity damages are generally not available under the ADA nor, due to its imposition of the same requirements and necessary consistent interpretation, the Rehabilitation Act. ***Baird v. Rose***, 192 F.3d 462, 468, 471-72 (4th Cir. 1999); *see also* ***Bess v. Kanawha County Bd. of Educ.***, 2009 WL 3062974 at *26-27 (S.D. W.Va. 2009). Thus, at the outset, the allegations pursuant to the Rehabilitation Act and the ADA against Defendant Taylor in his individual capacity should be **DISMISSED**.

With regard to the ADA and Rehabilitation Act claims brought against Defendant Taylor in his official capacity, a suit against the defendant in his official capacity is

considered to represent another way of pleading a suit against an entity of which he is an agent–i.e. Defendant Board.  *See* **Graham**, 473 U.S. at 165; *see also* **Bracey**, 55 F.Supp.2d at 420.  A reading of the Complaint as a whole and in the light most favorable to the plaintiff indicates that it was the decisions of Defendant Board, including that to retain Defendant Taylor as a teacher after the incident, that the plaintiff alleges ultimately deprived him of educational benefits.  As such, the ADA and Rehabilitation Act claims against Defendant Taylor in his official capacity are properly classified as claims against Defendant Board, and the same as alleged in Counts Four and Five should be **DISMISSED**.

### 2.    Defendant Board and Defendant Guth's Motion to Dismiss Counts Four and Five

Defendants Board and Guth's Motion to Dismiss argues first that the plaintiff's claims for the alleged failure to provide a free, appropriate education insofar as the plaintiff seeks monetary damages pursuant thereto have been mooted by the resolution of the plaintiff's due process claim.  [Doc. 8 at 15-16].  Alternatively, the defendants assert that the plaintiff's claims for the alleged failure to provide a free, appropriate education are barred by his failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA").  [*Id.*].  Defendants Board and Guth also assert that counts four and five fail to state a claim upon which relief can be granted because the facts fail to allege that the incident was motivated by the plaintiff's disability.  [*Id.* at 16-18].

The plaintiff's response first argues that he was entitled to protection under § 504 of the Rehabilitation Act, and the defendants' retention of Defendant Taylor and failure to find an appropriate classroom for the plaintiff precluded the plaintiff from attending school at his actual school.  [Doc. 13 at 8-9].  He argues that this was due to his disabilities, and

that homebound services are not acceptable under the IDEA, pursuant to which the school should have exhausted administrative remedies to find an acceptable new placement at the school. [*Id.* at 9]. The plaintiff also states that he was not made aware of proper due process remedies required by the IDEA until it was too late and futile to obtain a free, appropriate public education ("FAPE") pursuant to them, but he did obtain what prospective relief he could. [*Id.* at 10-11]. The plaintiff then explains that his § 504 and ADA claims deal with access to his placement, which was restricted as the result of the January 16 incident and because of his disability. [*Id.* at 12]. He asserts that he was not given reasonable accommodations, and that the defendants acted with intentional and/or deliberate indifference, concluding that the allegations against the defendants in the Complaint "as a whole" are sufficient to demonstrate that the defendants[3] acted with bad faith or gross misjudgment, and that because provisions under § 504 of the Rehabilitation Act differ significantly from the FAPE provisions under the IDEA, the agreement reached pursuant to due process does not preclude the plaintiff's ability to bring claims under § 504. [*Id.* at 12-13, 14-16]. Finally, regarding his Rehabilitation Act and ADA allegations, the plaintiff avers that he did state a sufficient claim for relief, particularly because "but for" his disability, the plaintiff would not have been excluded from the educational programs, access to which was within Defendant Board's control and restricted on a discriminatory basis. [*Id.* at 13-14].

Firstly, as noted herein and raised particularly in the defendants' reply, individual

---

[3]Worth briefly mentioning is that the plaintiff's memorandum states "that Plaintiffs acted with bad faith or gross misjudgment." [Doc. 13 at 13]. However, it is apparent from the context of the statement that the intended word was "defendants."

capacity damages are generally not available under the ADA nor, due to its imposition of the same requirements and necessary consistent interpretation, the Rehabilitation Act. **Baird**, 192 F.3d at 468, 471-72; *see also* **Bess**, 2009 WL 3062974 at *26-27. Additionally, a suit against Defendant Guth in his official capacity is considered to represent another way of pleading a suit against an entity of which he is an agent–i.e. Defendant Board. *See* **Graham**, 473 U.S. at 165; *see also* **Bracey**, 55 F.Supp.2d at 420. Accordingly, like the allegations of ADA and Rehabilitation Act violations against Defendant Taylor, those against Defendant Guth in both his individual and official capacities should be **DISMISSED**.

Secondly, the plaintiff's Complaint does not allege a violation of the IDEA, and as the purpose of a motion to dismiss is to test the sufficiency of the complaint, this Court will focus on the allegations actually raised in the Complaint and whether they are sufficiently pled.

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 1232. Section 504 of the Rehabilitation Act similarly provides, in pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794(a). Proving discrimination under § 504 requires "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA]." **Sellers v. Sch. Bd.**, 141 F.3d 524,

529 (4th Cir. 1998); *see also* ***Bess***, 2009 WL 3062974 at *28-29. To establish a § 504 violation, the plaintiff "must prove that [he has] been discriminated against–that [he was] excluded from the . . . benefit due to discrimination solely on the basis of the disability." ***Id***. (internal quotation marks omitted). In the context of the education of handicapped children, "either bad faith or gross misjudgment" must be shown in order to prove a violation of § 504 or the ADA. ***Id***. Thus, under § 504, the plaintiff must prove that his disability was the "but for" cause of the discriminatory actions. Under the ADA, however, the Fourth Circuit has held that the plaintiff need only "allege that discrimination on the basis of her disability was a motivating factor" for the defendant's conduct. ***Baird***, 192 F.3d at 470.

Here, the plaintiff alleges that the practices that denied him the benefits of participation in a public school education were intentionally discriminatory, that non-disabled students were not subjected to the same practices due to the fact that they lacked disabilities, and that the Board's actions were taken with deliberate indifference to the strong likelihood that the actions would result in a violation of the plaintiff's rights. Construed in the light most favorable to the plaintiff, the allegation is that the intentionally discriminatory treatment that resulted in the plaintiff's exclusion from public school programs was due to the fact that he was a disabled student; had he been a non-disabled student, none of the alleged practices resulting in his exclusion from a FAPE would have occurred. These allegations against Defendant Board are enough to state a plausible claim to relief because they do not simply restate the elements of the cause of action and, if proven, demonstrate a violation of the ADA and Rehabilitation Act.

**D.**     **Intentional Infliction of Emotional Distress Claims**

The plaintiff's sixth cause of action alleges that Defendant Taylor's actions "offended generally accepted standards of decency or morality," and that as a result, the plaintiff "suffered severe and serious emotional distress as well as other injuries and losses." [Doc. 1 at ¶¶ 88-89].  It alleges that Defendant Taylor is liable for the injuries and losses and that Defendant Board is also liable for the same under the doctrine of respondeat superior.  [*Id.* at ¶ 90].  No allegations relate to Defendant Guth.

In his motion to dismiss, Defendant Taylor argues that the plaintiff failed to sufficiently plead a viable cause of action for intentional infliction of emotional distress, particularly because, pursuant to West Virginia law, the plaintiff failed to plead that Defendant Taylor's conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency."  [Doc. 6 at 23].  Defendant Board's motion to dismiss argues that it is not liable for Defendant Taylor's actions because the same were outside of the scope of Defendant Taylor's employment.  [Doc. 8 at 21-22].

In response, the plaintiff asserts that he does allege conduct so extreme and outrageous to permit recovery because Defendant Taylor knew of the plaintiff's particular susceptibilities, and because of the special relationship Defendant Taylor had with the plaintiff as his special education teacher.  [Doc. 12 at 12-13].  He also argues that there is sufficient evidence to establish either that Defendant Board negligently retained Defendant Taylor or that Defendant Board did not feel that Defendant Taylor's actions were outside the scope of his employment, and thus that Defendant Board is vicariously liable for Defendant Taylor's intentional infliction of emotional distress.  [Doc. 13 at 19-20].

As stated by the Supreme Court of Appeals of West Virginia, to state a claim for

intentional infliction of emotional distress, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous to exceed the bounds of decency;

> (2) that the defendant acted with intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result for his conduct;

> (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and

> (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

***Travis v. Alcon Laboratories, Inc.***, 202 W.Va. 369, 504 S.E.2d 419 (1998). With regard to the first element, the defendant's conduct must be shown to be "more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." ***Id***. at 375 (citing ***Grandchamp v. United Air Lines, Inc.***, 854 F.2d 381, 383 (10th Cir. 1988)). The ***Travis*** Court also cited to the comments of the Restatement of Torts (Second) to note that the "extreme or outrageous character of the conduct may arise from the actor's knowledge that the other is particularly susceptible to emotional distress, by reason of some . . . mental condition." ***Id***. at 376. As to the second element, the Court again looked to the Restatement's commentary and stated that it applies "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct," and also "where he acts recklessly, . . . in deliberate disregard of a high degree of probability that the emotional distress will follow." ***Id***. at 378-379. The third element is satisfied by showing a "logical sequence of cause and effect." ***Id***. at 379. The Court also stated that the final element of severe emotional distress includes "such reactions as mental suffering and anguish, shock,

fright, horror, grief, shame, humiliation, embarrassment anger, chagrin, disappointment, worry, and nausea," and finally noted that "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Id*. at 380 (citing Restatement of Torts (Second), § 46, comment (j) (1965)).

Taking the facts alleged in the Complaint as true, and reading the Complaint as a whole in the light most favorable to the plaintiff, this Court finds that the plaintiff has pled facts that give rise to an inference the Defendant Taylor engaged in outrageous conduct that was inflicted intentionally or with reckless disregard for the likelihood that emotional distress would result and that did cause severe emotional distress. The plaintiff has alleged that Defendant Taylor, the disabled plaintiff's special education teacher, grabbed him by the neck, choked him, pushed him into a bookcase, and then forbade him from leaving the classroom. This is alleged to have occurred in response to a comment made to another student, which is not alleged to have been sufficient to provoke the level of physicality imposed. The Complaint states that Defendant Taylor should have known that his superior size and strength would result in this action causing injury to the plaintiff. Moreover, one may infer that a special education teacher would be aware of his student's disabilities and susceptibilities, including the plaintiff's asthma. The act of grabbing one's neck and choking him necessarily cuts off airflow, thereby putting a reasonable person in fear for his life, and becomes more egregious due to the plaintiff's asthma. Additionally, the plaintiff is identified as having Attention Deficit/Hyperactivity Disorder, Impulse-Control Disorder, Bipolar Disorder, Mild Mental Retardation, and Mild Hearing Loss. Each of these, presumably known to the special education teacher, causes one to be more susceptible to emotional distress. These facts certainly may be construed as offensive to community notions of

acceptable conduct and themselves outrageous conduct.

This is also the case with the second element of intentional infliction of emotional distress. The Complaint states that Defendant Taylor's actions were motivated by an intention to punish and harm; were deliberate, malicious, and intentional; and were objectively unreasonable, willful and wanton, and shocking to the conscience in light of the facts and circumstances surrounding such physicality on a disabled person entrusted to the defendant's care. It also states that Defendant Taylor knew or should have known that serious and lasting emotional injuries would occur from his actions because of the plaintiff's mental and psychological disabilities. These facts make it plausible that Defendant Taylor acted at least in deliberate disregard of a high degree of probability that emotional distress would result from his actions, if not with deliberate intent to cause such emotional distress. Furthermore, the plaintiff alleges throughout the Complaint that his alleged injuries were the result of Defendant Taylor's actions, thereby sufficiently alleging the third element. Finally, the plaintiff alleges a multitude of injuries throughout the Complaint that, if proven, certainly demonstrate that the plaintiff suffered severe emotional distress that no reasonable person would be expected to endure. As such, this Court finds that the plaintiff has stated a claim for intentional infliction of emotional distress against Defendant Taylor.

Regarding the allegations that Defendant Board is vicariously liable for Defendant Taylor's alleged infliction of emotional distress, the nature of the doctrine of respondeat superior is that an "agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable." *Dunn v. Rockwell*, 225 W.Va. 43, 689

S.E.2d 255 (2009); *see also* **Griffith v. George Transfer & Rigging, Inc.**, 157 W.Va. 316, 201 S.E.2d 281 (1973) ("The negligent or tortious act may be imputed to the employer if the act of the employee was done in accordance with the expressed or implied authority of the employer.").  Defendant Taylor points out in his motion to dismiss that an employer is not liable for "the intentional malfeasance of its employees."  **Mallamo v. Town of Rivesville**, 197 W.Va. 616, 477 S.E.2d 525 (1996).  However, the "intentional" label on the cause of action is not sufficient to defeat respondeat superior in this matter, nor is it where the inquiry concludes.  Intentional infliction of emotional distress does necessarily implicate an intentional act; however, the elements of the claim indicate that deliberate intent is not a mandatory aspect of the cause of action.  The second element provides that it may be satisfied where the defendant "acted recklessly when it was certain or substantially certain emotional distress would result for his conduct."  *Travis*, 202 W.Va. at 375.  The *Travis* Court also repeatedly referred to the tort as "reckless infliction of emotional distress."  *See, e.g.*, *id.* at 375, 378, 380.  As such, the key inquiry with regard to the plaintiff's sixth cause of action as it is pled against Defendant Board is not whether Defendant Taylor acted intentionally but rather whether he acted within the scope of his employment when the incident occurred.

The Complaint alleges throughout that Defendant Taylor's actions were taken within the scope of his employment, and that Defendant Board condoned these actions.  In reading the Complaint as a whole and in the light most favorable to the plaintiff, it can be inferred that the plaintiff intended "condone" to also suggest "impliedly authorize," as it certainly is not alleged that Defendant Board instructed Defendant Taylor to act as he did,

but it did retain him as a teacher of special needs students following the incident with no noted reprimands. This fact, that Defendant Board retained Defendant Taylor as a special education educator following a violent encounter with a disabled student, supports the notion that Defendant Board condoned Defendant Taylor's behaviors, though it is certainly not dispositive. However, for motion to dismiss purposes, the Complaint states sufficient facts to allege a plausible claim for liability via respondeat superior against Defendant Board.

### E.    State Tort Claim for Personal Injury

The plaintiff's seventh cause of action, labeled "State Tort Claim for Personal Injury," alleges that Defendant Taylor's actions of "choking" and "pushing [the plaintiff] while [the plaintiff] was a student in Defendant Taylor's special education classroom at Jefferson High School [were] deliberate, [malicious] and intentional and without provocation." [Doc. 1 at ¶ 92]. The Complaint alleges that Defendant Taylor "knew or should have known" that, due to his "superior size and strength," his actions would cause injury to the plaintiff, and that because of the plaintiff's "mental and psychological disabilities," Defendant Taylor's actions would cause "serious and lasting emotional injuries." [*Id.* at ¶ 92]. Resulting from the incident, the plaintiff states that he[4] suffered "aggravation to a pre-existing back injury with increased chronic pain, red marks, soreness, anguish, humiliation, fear, and loss of enjoyment of life all to his non-economic damages in an amount to be determined at trial," and further that he "incurred medical and psychological treatment expenses in the value

---

[4]To again briefly note, the Complaint states "by choking [and] pushing Defendant against a bookcase while Defendant was a student" [Doc. 1 at ¶ 92], and that "Defendant suffered aggravation" [*Id.* at ¶ 93]. However, it is apparent from the context of the statement that the Complaint was intended to read as stated above.

of $3,000." [*Id.* at ¶ 93]. Finally, the claim alleges that "Defendant Taylor is directly and individually liable for all of said injuries and losses," and that Defendant Board is liable for the same under the doctrine of respondeat superior. [*Id.* at ¶ 94]. No allegations relate to Defendant Guth.

Both motions to dismiss argue that this seventh cause of action should be dismissed because the allegations and supporting authority contained therein are unclear. [Docs. 6 at 24-25; 8 at 22-23]. However, it is apparent to this Court that the plaintiff has alleged a common law battery cause of action. As stated by the Restatement (Second) of Torts, § 13 (1965), an actor is subject to liability to another for battery if:

(1) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(2) a harmful contact with the person of the other directly or indirectly results.

See ***W.Va. Fire & Cas. Co. v. Stanley***, 216 W.Va. 40, 602 S.E.2d 483 (2004). The plaintiff's seventh cause of action alleges that Defendant Taylor's acts of choking and pushing the plaintiff against a bookcase were deliberate, malicious, intentional and without provocation, and that a plethora of damages was suffered as a result. Taking these allegations as true, it is certainly plausible that Defendant Taylor acted intending to cause a harmful or offensive contact with the plaintiff's person, and that a harmful contact with the plaintiff resulted.

Furthermore, because the doctrine of respondeat superior applies where an act was done within the scope of the defendant's employment and the plaintiff alleges throughout the Complaint that Defendant Taylor's actions were done within the scope of his employment and condoned by Defendant Board, it is plausible that the plaintiff is entitled

to relief against Defendant Board under a theory of respondeat superior for Defendant Taylor's alleged battery. As such, this Court finds that the plaintiff has sufficiently pled a plausible claim for battery against Defendants Board and Taylor.

### F. Claim for Punitive Damages Against Defendant Board

As a final matter in its motion to dismiss, Defendant Board asserts that the plaintiff is not entitled to recover punitive damages against Defendant Board on his state law claims, pursuant to West Virginia Code § 29-12A-7(a). [Doc. 8 at 23]. The plaintiff concedes that this award may not be had against Defendant Board. Accordingly, the claim for punitive damages against Defendant Board is **DISMISSED**.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that Defendant Taylor's Motion to Dismiss **[Doc. 5]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**, and that Defendants Jefferson County Board of Education and Howard Guth's Motion to Dismiss **[Doc. 7]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**. Accordingly:

- All claims against Defendant Guth are **DISMISSED WITH PREJUDICE**;

- Counts One and Three are **DISMISSED WITH PREJUDICE**;

- Count Two is **DISMISSED WITH PREJUDICE** as it relates to Defendant Board; and

- Counts Four and Five are **DISMISSED WITH PREJUDICE** as they relate to Defendant Taylor.

For clarification, the remaining claims are Count Two against Defendant Taylor in his individual capacity, Counts Four and Five against Defendant Board, Count Six, and

Count Seven.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 1, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE